COOPER v WASHTENAW COUNTY

Docket Nos. 262141, 262903. Submitted January 31, 2006, at Detroit. Decided April 4, 2006, at 9:10 a.m. Leave to appeal sought.

Dawn Cooper, as personal representative of the estate of Demetrius Morton, deceased, brought an action against Washtenaw County, the city of Ann Arbor, and law enforcement officers of the county and of the city, claiming negligence relating to the decedent's suicide while he was a prisoner confined in a holding cell at the 15th District Court. The law enforcement defendants moved for summary disposition, arguing that the proximate cause of the decedent's death was his conduct, not that of the defendant law enforcement officers. The court, Timothy P. Connors, J., denied the motion of the Ann Arbor law enforcement officers, but granted the motion of the county law enforcement officers. The city law enforcement officers appealed, the plaintiff appealed by leave granted with respect to the dismissal of her claim against the county law enforcement officers, and the appeals were consolidated.

The Court of Appeals *held*:

The city and county law enforcement officers were entitled to summary disposition on the basis of governmental immunity. The proximate cause, that is, the one most immediate, efficient, and direct cause, of decedent's death was his own conduct. MCL 691.1407(2). The actions of the city and county law enforcement officers cannot be considered the proximate cause of the death.

Affirmed in part and reversed in part.

COOPER, P.J., dissenting, would affirm the denial of summary disposition for the city law enforcement officers, reverse the grant of summary disposition for the county law enforcement officers, and remand the case for trial. The defendants are immune from tort liability on the basis of governmental immunity unless their conduct amounted to gross negligence that is the proximate cause of the injury, MCL 691.1407(2)(c). Gross negligence is conduct so reckless that it demonstrates a substantial lack of concern for whether an injury results, MCL 691.1407(7)(a). Genuine issues of material fact remain concerning whether the defendants' alleged gross negligence in failing to monitor a prisoner they knew to be

suicidal was the proximate cause of the decedent's death and whether the decedent's actions constituted an intervening and superseding cause. Those issues preclude summary disposition and require resolution by the trier of fact.

GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES — GROSS NEGLIGENCE — PROXIMATE CAUSE.

An employee of a governmental agency is governmentally immune from tort liability unless the employee's conduct amounts to gross negligence that is the one most immediate, efficient, and direct cause of the injury or damage (MCL 691.1407[2][c]).

*Fieger, Fieger, Kenney & Johnson, P.C.* (by *Victor S. Valenti*), for Dawn Cooper.

*Reach, Ranney & Carpenter, P.C.* (by *Cynthia L. Reach*), for Washtenaw County, Anthony Woodford, Pamela Raciti, and Eugene Hahn.

*Stephen K. Postema,* City Attorney, and *David W. Swan* and *Robert W. West,* Assistant City Attorneys, for the city of Ann Arbor, Michael Watchowski, and Steve Lawrence.

Before: COOPER, P.J., and JANSEN and MARKEY, JJ.

JANSEN, J. In Docket No. 262141, defendants Ann Arbor Police Officers Michael Watchowski and Steve Lawrence appeal as of right the trial court's order denying their motion for summary disposition pursuant to MCR 2.116(C)(7) and (8). In Docket No. 262903, plaintiff appeals by leave granted an order granting summary disposition to defendants Washtenaw County and individual county law enforcement personnel Anthony Woodford, Pamela Raciti, and Eugene Hahn. Plaintiff challenges the dismissal of the individual county defendants only. We conclude that all individual city defendants and the individual county defendants were entitled to summary disposition on the basis of

governmental immunity. We therefore reverse the order denying the individual city defendants' motion and affirm the order granting summary disposition in favor of the individual county defendants. These consolidated appeals are being decided without oral argument pursuant to MCR 7.214(E).

This action arises from the death of plaintiff's decedent, Demetrius Morton, who committed suicide while confined in a holding cell at the 15th District Court. At issue in these appeals is whether the individual defendants, law enforcement personnel involved in Morton's confinement, are entitled to summary disposition on the basis of governmental immunity, MCL 691.1407(2), because their alleged conduct was not "the proximate cause" of Morton's death.

This Court reviews de novo rulings on summary disposition motions. *Van v Zahorik,* 460 Mich 320, 326; 597 NW2d 15 (1999).

MCL 691.1407(2) provides individual immunity for governmental employees under certain circumstances. The statute states, in part:

> Except as otherwise provided in this section, . . . each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person . . . caused by the officer, employee . . . while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's . . . conduct does not amount to gross negligence that is *the proximate cause* of the injury or damage. [MCL 691.1407(2) (emphasis added).]

The phrase "the proximate cause" within subdivision c "is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury." *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000).

We agree with defendants that the one most immediate, efficient, and direct cause of Morton's death was his own conduct. This case is analogous to *Kruger v White Lake Twp*, 250 Mich App 622, 626-627; 648 NW2d 660 (2002). There, the plaintiff asked the police to take her daughter into custody because the daughter was intoxicated and posed a danger to herself and others. The police took her into custody and handcuffed her in a booking room. She escaped from the police station, ran into traffic, was hit by a vehicle, and died. This Court held that police officers were entitled to governmental immunity because their actions could not be considered "the proximate cause" of the death. The Court stated that "there were several other more direct causes of Kathryn's injuries than defendant officers' conduct, e.g., her escape and flight from the police station, her running onto M-59 and into traffic, and the unidentified driver hitting plaintiff's decedent. Any gross negligence on the defendant officers' part is too remote to be 'the' proximate cause of Katherine's injuries." *Id.*, p 627.

It is plaintiff's position here that Morton's actions should not be considered the proximate cause of his death because, at least in prisoner suicide cases, causation is intertwined with foreseeability. Therefore, if Morton's actions were foreseeable, then those actions are not a superseding cause, and, thus, defendants' conduct may be deemed "the proximate cause." Plaintiff primarily relies on an unpublished federal district

court opinion, *Schreiber v Crawford Co,* 2002 WL 1907974; 2002 US Dist LEXIS 15349 (ED Mich, 2002).

We decline plaintiff's invitation to adopt the reasoning in *Schreiber.* The decisions of this Court and our Supreme Court that address the issue of "the proximate cause" under MCL 691.1407(2) in circumstances in which there were multiple causes of the harm do not discuss the concepts of intervening and superceding causation and do not indicate that foreseeability of an intervening cause is relevant to whether it may be deemed "the proximate cause" under the statute. For example, in *Robinson, supra* at 462, "the proximate cause" of injuries and deaths resulting from a collision following a police pursuit was the reckless conduct of the driver of the fleeing vehicle, rather than the pursuit of the individual police officers. Whether the reckless conduct or the flight of the vehicle was foreseeable to the officers was not mentioned. In *Curtis v City of Flint,* 253 Mich App 555, 562-563; 655 NW2d 791 (2002), the proximate cause of the plaintiff's injuries when her vehicle collided with the back of a car that abruptly changed lanes and stopped for an emergency vehicle was the abrupt movement and stopping of the vehicle that she hit, not the actions of the driver of the emergency vehicle. Whether the evasive movements were foreseeable to the driver of the emergency vehicle was not considered. There is no discussion of intervening causation or foreseeability in these cases and no indication that the cause that is the most immediate, efficient, and direct cause preceding an injury may not be deemed "the proximate cause" for purposes of MCL 691.1407(2) if it was foreseeable to the governmental actors.

Because the alleged conduct of the individual defendants in this case was not "the proximate cause" of

Morton's death, these defendants are immune from tort liability pursuant to MCL 691.1407(2). Therefore, we reverse the order denying the individual city defendants' motion for summary disposition and affirm the order granting summary disposition in favor of the individual county defendants.

Affirmed in part, reversed in part, and remanded for entry of judgment in favor of the individual city defendants.

MARKEY, J., concurred.

COOPER, P.J. (*dissenting*). In Docket No. 262141, defendants Ann Arbor police officers Michael Watchowski and Steve Lawrence (city defendants) appeal as of right from the trial court's order denying their motion for summary disposition pursuant to MCR 2.116(C)(7) and (8). In Docket No. 262903, plaintiff appeals by leave granted from an order granting summary disposition to defendants Washtenaw County and individual county law enforcement personnel Anthony Woodford, Pamela Raciti, and Eugene Hahn (county defendants). Plaintiff challenges the dismissal of the individual county defendants only. The majority finds all defendants entitled to summary disposition on the basis of governmental immunity, and therefore reverses the order denying the individual city defendants' motion and affirms the order granting summary disposition in favor of the individual county defendants. I respectfully dissent because I believe genuine issues of material fact remain as to whether defendants' alleged gross negligence was the proximate cause of the suicide of plaintiff's decedent. I would affirm as to the city defendants, reverse as to the county defendants, and remand for trial to allow a trier of fact to resolve the unresolved questions of causation.

All defendants are law enforcement personnel who were acting or reasonably believed they were acting within the scope of their authority at the time plaintiff's decedent, Demetrius Morton, committed suicide while confined in a holding cell at the 15th District Court. Defendants are therefore immune from tort liability on the basis of governmental immunity, MCL 691.1407(2), unless their conduct "amounted to gross negligence that is the proximate cause of the injury . . . ." The proximate cause is "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v Detroit,* 462 Mich 439, 459; 613 NW2d 307 (2000). Had decedent not been a known suicide risk left alone in a holding cell for an hour and twenty minutes in a prison uniform apparently easily fashioned into a noose, then decedent's own conduct would plainly have been the most immediate, efficient, and direct cause of his death. Since that is not the case here, however, the causation inquiry cannot end with a simple last-in-time determination.

Defendants were grossly negligent if their conduct was "so reckless as to demonstrate a substantial lack of concern for whether an injury results," MCL 691.1407(7)(a). The trial court found these relevant facts: at the time of decedent Morton's arrest, he was known to be a suicide risk; following his arrest, he was evaluated by mental health professionals at the University of Michigan medical center psychiatric emergency room, who directed the officers with charge of decedent to keep a close watch over him to prevent him from harming himself; a social worker in the Washtenaw County jail recommended he be placed on suicide watch, and he was placed on suicide watch; the defendant county sheriff's deputies who had transferred custody of decedent to the defendant Ann Arbor police officers did not inform the Ann Arbor officers of the high risk of

suicide; decedent had been wearing the white uniform of a suicide watch inmate when he was transferred; and decedent had been left unattended in a holding cell for approximately one hour and twenty minutes, during which time he used his jail-issued shirt to hang himself.

These undisputed facts could lead a reasonable jury to conclude that defendants were grossly negligent. Even if defendants were grossly negligent, however, they are immune from liability unless that negligence was the proximate cause of the suicide. The alleged gross negligence may be the most direct cause of decedent's suicide if his actions were sufficiently foreseeable to fail as superseding causes or, alternatively, if his instability precluded competent volitional action.

The majority posits that because decisions of this Court and our Supreme Court that address the issue of "the proximate cause" under MCL 691.1407(2) in circumstances where there were multiple causes of the harm do not discuss the concepts of intervening and superseding causation, the question is foreclosed. I believe that a tenet of such fundamental importance to tort law may not be dismissed so easily, and assert that the question, having not been addressed, is an open one. Furthermore, following the venerable instruction of the COOLEY Court in *Lewis v Flint & Pere Marquette R Co,* 54 Mich 55; 19 NW 744 (1884), I believe that the critical inquiry is foreseeability and that even a defendant acting under color of governmental authority ought not be relieved of liability for the foreseeable consequences of his actions.

Our Supreme Court in *Calliari v Fisher,* 190 Mich 56; 155 NW 689 (1916), clarified intervening and superseding causation succinctly:

> [T]he defendant may not be held liable for his original negligent act unless that act produces the consequences for

which recovery is sought, without the intervention of any independent, unforeseen cause, without which the injuries would not have occurred. If such cause intervenes, it may be said that the wrong of the defendant is too remote to be made the basis of an action. [*Id.* at 61.]

The Court noted this conclusion was "drawn from an examination of all the authorities." *Id.* The authority there referred to is specifically *Stoll* v *Laubengayer,* 174 Mich 701; 140 NW 532 (1913), which itself refers to *Lewis, supra,* as the authority on causation from the COOLEY Court, given the thorough review of cases on causation included in that opinion.

For a century of Michigan jurisprudence, only an unforeseen intervening cause severed a defendant's liability: in 1916, *Calliari* instructed that foreseeable causes did not render a defendant's actions too remote to incur liability; in 2005, our Supreme Court again found "the standard by which to gauge whether an intervening cause supersedes, and thus severs the causal link, is generally one of reasonable foreseeability." *People v Schaefer,* 473 Mich 418, 437; 703 NW2d 774 (2005) In the years between, the standard was the same, and in the years to follow, it ought to remain so. The facts of this case clearly suggest decedent's final acts were foreseeable. As such, they are arguably not intervening and superseding causes, and do not relieve defendants of liability for their alleged gross negligence. Critical to the determination of this and like cases by summary disposition, whether an intervening act of negligence is a superseding proximate cause is a question for the jury. *May v Parke, Davis & Co,* 142 Mich App 404, 419; 370 NW2d 371 (1985); *Taylor v Wyeth Laboratories, Inc,* 139 Mich App 389, 401-402; 362 NW2d 293 (1984). With this jury question as yet unanswered, summary disposition of plaintiff's claims is inappropriate.

The majority addresses neither the issue of superseding causation nor the issue of gross negligence, relying instead on *Kruger v White Lake Twp,* 250 Mich App 622, 626-627; 648 NW2d 660 (2002), to lead as if irrefutably to the conclusion that the one most immediate, efficient, and direct cause of Morton's death was his own conduct. I dissent because I find *Kruger* distinguishable from the facts in this case. In *Kruger,* the plaintiff asked the police to take her daughter into custody because she was intoxicated and posed a danger to herself and others. The police took her into custody and handcuffed her in a booking room. She escaped from the police station, ran into traffic, was hit by a vehicle, and died. This Court held that police officers were entitled to governmental immunity because their actions could not be considered "the proximate cause" of the death. The Court stated that "there were several other more direct causes of Kathryn's injuries than defendant officers' conduct, e.g., her escape and flight from the police station, her running onto M-59 and into traffic, and the unidentified driver hitting plaintiff's decedent. Any gross negligence on the defendant officers' part is too remote to be 'the' proximate cause of Katherine's injuries." *Id.* at 627.

Two clear distinctions separate that case from this. First, plaintiff's decedent in *Kruger* was not under the control and care of defendant officers when she was killed. Assuming reasonable police procedures were in place and followed, it was not foreseeable that she might escape and run onto a busy road. Plaintiff's decedent in this case was under the care and control of defendants. His range of action was severely limited. In the particularly controlled environment of a person alone in a cell, nearly every contingency is foreseeable and therefore many if not most outcomes are preventable. Defendants were responsible for checking on de-

cedent and for keeping from him the means of hanging himself; they did neither. Defendants were so responsible because of the second critical distinction from *Kruger* at issue here. In that case, plaintiff claimed plaintiff's decedent had posed a danger to herself and others because she was intoxicated. In this case, mental health professionals had informed county defendants that decedent was at high risk of suicide because he was mentally unstable. There is a significant disparity between the two situations and their import with respect to how much accountability ought be charged to the officers. In *Kruger*, there is an arguably open question of what defendants actually knew, as compared to suspected or thought, about the risk that decedent might have wished to harm herself. In this case, there is no such debate; defendants knew of the suicide risk and that decedent had been judged mentally unstable by mental health professionals, and are accountable for their negligent failure to act on that knowledge.

A more appropriate precedent for this case is *Ross v Glaser,* 220 Mich App 183; 559 NW2d 331 (1996) (opinion by KELLY, J.), where this Court found that whether defendant's handing a loaded gun to his mentally unstable son could be the proximate cause of his son shooting and killing a person was a question for the jury. *Id.* at 192-193. The Court found that the circumstances there, that the father knew the son to be mentally incompetent, imposed a duty on the father not to provide a weapon to the son. *Id.* at 189. In this case, defendants were likewise on notice of decedent's unstable condition, and specifically his suicidal tendencies, and their action in leaving him alone with the means to hang himself is therefore analogous to handing him a loaded gun. As in *Glaser,* "[d]efendant did not merely fail to prevent harm; he increased the risk of harm . . . ." *Id.* at 191. The bottom line, in finding

summary disposition inappropriate, is that reasonable minds could differ on the question of whether the act of shooting was insufficiently foreseeable to cut off the defendant's liability for providing the weapon. *Id.* at 193.

Decedent's then mental instability increases the level of care defendants owed[1] and decreases the possibility that he may reasonably have been accountable for his own action. The question of whether decedent was, at the time of his suicide, competent to act purposefully and volitionally is another question for the trier of fact. Decedent had been evaluated and found mentally unstable by mental health professionals. Arguably this relieves him of responsibility for the last act in the causal chain that ended his life.

The trial court noted that city defendants had personal experience of decedent's prior efforts to harm himself, that they had changed him out of his suicide-prevention suit into a white uniform for his court appearance, and that they had left him alone in a holding cell for an hour and twenty minutes, failing to perform any routine checks on him during that time. The trial court found this a sufficient basis to find a reasonable trier of fact might determine the city defendants' conduct was the proximate cause of decedent's suicide. The trial court correctly reserved this determination of gross negligence as a jury question to be answered only after more development of the facts.

The trial court found that county defendants had not taken appropriate precautions to prevent decedent

---

[1] It is noteworthy that our Supreme Court, in *Jackson v Detroit,* 449 Mich 420, 432; 537 NW2d 151 (1995), found it reasonable that officers, aware of a prisoner's suicidal tendencies, checked on him every 15 minutes although their policy required checks only every 30 minutes.

from harming himself. Although their failure to inform city defendants of decedent's unstable condition was arguably grossly negligent, the trial court found it too remote to be the proximate cause of the suicide, given the intervening actions of city defendants. I disagree and find the issue of foreseeability to be the probative point here. If it was foreseeable that the county defendants' failure to inform the city defendants of the risk of suicide might result in decedent's death, then whether those intervening causes are also superseding causes is a question for the trier of fact.

Arguably decedent was not sufficiently competent to be accountable for his actions. Arguably his suicide was the foreseeable result of county defendants' failure to inform city defendants of his instability. Arguably that failure to inform was gross negligence. Arguably city defendants were or should have been aware of decedent's suicidal tendencies because he was dressed in the suicide watch uniform when they picked him up, or because they were witness to his attempt to harm himself during a prior incident when defendant Watchowski had transported decedent to a court appearance. Arguably it was gross negligence to leave decedent unattended, failing even to complete routine checks for an hour and twenty minutes, let alone providing any special attention required on suicide watch. A reasonable trier of fact could decide any of these questions either way. They are questions of material fact that ought to be before a trier of fact, and summary disposition is therefore inappropriate.

I would affirm the denial of summary disposition as to the city defendants, reverse the grant of summary disposition as to the county defendants, and remand for trial to allow a trier of fact to resolve the unresolved questions of causation.